IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02693-REB-MEH

WILLIAM B. ELLER,

      Plaintiff,

v.

TODD TONCHE,
TAMI RUCH,
JEANNIE PARK,
KENNETH LEFEVER,
SARAH DARULA,
NICOLE ALBRIGHT,
CHARLES KUDLAUSKAS,
CHARLENE LARSON, and
MEGHAN JACKSON,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Defendants move for summary judgment on all of Plaintiff William Eller's claims. Defendants first contend Mr. Eller has not exhausted his administrative remedies. Alternatively, Defendants Tami Ruch, Jeannie Park, Nicole Albright, Charles Kudlauskas, Charlene Larson, and Meghan Jackson assert entitlement to qualified immunity. The Court recommends holding that Defendants waived their untimeliness objection regarding some of Mr. Eller's grievances, and that disputed issues of fact exist as to whether administrative remedies were available for the remaining grievance. Proceeding to the merits, the Court recommends holding that Officer Ruch, Officer Park, Ms. Jackson, and Ms. Larson are not entitled to qualified immunity at this time. However, Mr. Eller fails to present evidence establishing a constitutional violation against Ms. Albright and Mr.

Kudlauskas. Accordingly, the Court respectfully recommends granting in part and denying in part Defendants' motion.

**BACKGROUND**

## I. Factual Background

The evidence submitted by the parties reveals the following facts viewed in the light most favorable to Mr. Eller, who is the non-moving party in this matter.

1. Mr. Eller was an inmate at the Sterling Correctional Facility ("SCF") in the Colorado Department of Corrections ("CDOC") at the time of the incidents giving rise to this lawsuit. Defs.' Statement of Facts ¶ 1, ECF No. 156; Resp. to Defs.' Statement of Facts ¶ 1, ECF No. 163.

2. On February 13, 2013, Correctional Officers Park and Tonche came to Mr. Eller's cell to escort Mr. Eller to an appointment. Defs.' Statement of Facts ¶ 3; Resp. to Defs.' Statement of Facts ¶ 1.

3. When Defendants arrived at Mr. Eller's cell, Mr. Eller was having a disagreement with his cellmate. Defs.' Statement of Facts ¶ 4; Resp. to Defs.' Statement of Facts ¶ 4.

4. Nevertheless, Mr. Eller gathered his belongings and walked out of his cell into the vestibule area. Defs.' Statement of Facts ¶ 5; Resp. to Defs.' Statement of Facts ¶ 4.

5. Mr. Eller informed the officers that he did not want to go to his appointment. Instead, he wished to be handcuffed so he could see the housing sergeant regarding a request to change cells. Defs.' Statement of Facts ¶ 6; Resp. to Defs.' Statement of Facts ¶ 7.

6. Officer Ruch placed Mr. Eller in handcuffs, after which Mr. Eller turned around to face Officer Tonche. Defs.' Statement of Facts ¶¶ 8–9; Resp. to Defs.' Statement of Facts ¶ 7.

7.  Mr. Eller claims that Officer Tonche then punched him in the face, put him in a headlock, and "face-planted [him] into the concrete." Dep. of William Eller 91:17–92:5, June 28, 2017 ("Eller dep."), ECF No. 163-2.

8.  Officer Ruch assisted in taking Mr. Eller to the ground. Dep. of Jeannie Park, 41:10–:14, Apr. 14, 2017 ("Park dep."), ECF No. 163-3; Dep. of Tami Ruch, 42:4–:11, Apr. 10, 2017 ("Ruch dep."), ECF No. 163-6.

9.  During this incident, Officer Park was standing approximately three feet from Officer Tonche, Officer Ruch, and Mr. Eller. Park dep. 50:10–:16.

10. Mr. Eller contends that once he was on the ground, Officer Tonche "took a knee, jumped up, drove it in the back of [his] neck," and "put a knee in the back of [his] spine." Eller dep. 92:1–:4. Officer Tonche then "[j]umped back up [and] stomped [Mr. Eller's] left leg where it snapped." *Id.* at 92:4–:5; *see also* Aff. of Jonathan Trujillo, ECF No. 163-5, at 1–2; Aff. of Jeremiah Woolbright, ECF No. 163-5, at 4.

11. Additionally, Mr. Eller remembers being kicked in the torso by either Officer Ruch or Officer Park. Eller dep. 99:15–100:14.

12. The entire incident last approximately three minutes. Park dep. 58:2–:8; Pl.'s Statement of Facts ¶ 1, ECF No. 163; Resp. to Pl.'s Statement of Facts ¶ 1, ECF No. 170.

13. On the same day as the incident, Defendant Sarah Darula, a nurse at SCF, performed an anatomical examination on Mr. Eller. Ms. Darula noted a one-inch unopened abrasion on Mr. Eller's left arm and a two-by-two inch red unopened area on Mr. Eller's lower back. ECF No. 156-11, at 6.

14. Due to his allegedly abusive and threatening conduct on February 13, 2015, Mr. Eller was

subsequently convicted of advocating or creating a facility disruption. Defs.' Statement of Facts ¶ 17; Resp. to Defs.' Statement of Facts ¶ 17.

15.    Beginning on the day of the incident and continuing through February 23, 2015, Mr. Eller verbally complained to every nurse on med line[1] about pain and swelling in his leg. Aff. of William Eller ¶¶ 5–6, ECF No. 163-1.

16.    In addition to verbal complaints, inmates in administrative segregation like Mr. Eller can submit informal medical complaints, called "kites," either directly to a nurse during med line or by placing it in the cell door so that a nurse on med line can take the kite as he or she walks by. Dep. of Sterling Correctional Facility 53:11–:25, Aug. 22, 2017 ("SCF dep."), ECF No. 163-28. The nurse on med line then takes the kite to the nurses' station and places it in a basket to be entered into the computer system. Dep. of Nicole Albright 23:24–24:10, Aug. 24, 2017 ("Albright dep."), ECF No. 163-18. Although the charge nurse occasionally assigns a specific person to input kites into the computer system, kites are generally entered by any nurse who has time. Pl.'s Statement of Facts ¶ 13; Resp. to Pl.'s Statement of Facts ¶ 13.

17.    Between February 13, 2015 and February 23, 2015, Mr. Eller submitted kites twice a day to the nurses on med line. Aff. of William Eller ¶¶ 5–6; ECF No. 163-9. Among other issues, these kites complained of "extreme pain" and "chipped teeth," and they requested an x-ray for his broken leg. ECF No. 163-9. However, none of these kites were entered into the computer system. Pl.'s Statement of Facts ¶ 7; Resp. to Pl.'s Statement of Facts ¶ 7.

_____

[1] During "med line" or "med pass," a single nurse would walk through each unit to pass out medication to the inmates. Eller dep. 28:11–:17; Dep. of Nicole Albright 22:4–23:8, Aug. 24, 2017 (Albright dep."), ECF No. 163-18.

18. At some point between February 14, 2015 and February 23, 2015, Mr. Eller told Ms. Jackson, a nurse at SCF, that he believed he had a broken leg as a result of the incident with Officers Tonche, Ruch, and Park. Mr. Eller contends he informed Ms. Jackson that he had extreme pain and was unable to bear weight on his leg. Defs.' Statement of Facts ¶ 20; Resp. to Defs.' Statement of Facts ¶ 20.

19. Mr. Eller also gave Ms. Jackson a kite. Eller dep. 40:10–41:12; Defs.' Statement of Facts ¶ 20; Resp. to Defs.' Statement of Facts ¶ 20. However, Ms. Jackson did not enter the kite into the computer system. Pl.'s Statement of Facts ¶ 7; Resp. to Pl.'s Statement of Facts ¶ 7.

20. Mr. Eller informed Ms. Larson, a nurse at SCF, about his extreme leg pain many times between February 13, 2015 and February 23, 2015. Specifically, Mr. Eller remembers telling Ms. Larson on February 22, 2015 that his leg feels broken and that he suffers extreme pain when he attempts to stand on it. Eller dep. 175:18–76:3; Defs.' Statement of Facts ¶ 23; Resp. to Defs.' Statement of Facts ¶ 23.

21. Mr. Eller contends that in response to his verbal complaints and kites, Ms. Larson threatened him, threw his kites away, and destroyed his kites in front of him. Eller dep. 78:1–:3, 253:13–:23.

22. On February 23, 2015, Ms. Albright, a charge nurse at SCF, requested that Ms. Larson examine Mr. Eller's leg. After doing so, Ms. Larson reported to Ms. Albright that Mr. Eller needed further attention. Defs.' Statement of Facts ¶ 26; Resp. to Defs.' Statement of Facts ¶ 26.

23. Ms. Albright subsequently performed an assessment on Mr. Eller's leg and noted major

swelling to Mr. Eller's left ankle.  Ms. Albright also conducted a capillary refill and noted that Mr. Eller's skin was warm to touch.  Ms. Albright ordered an ACE wrap and ice pass for the next seventy-two hours and noted that Mr. Eller would have to undergo an x-ray for a possible fracture.  Lastly, Ms. Albright reported her findings to the physician assistant, Mr. Kudlauskas.  ECF No. 156-11, at 4; Defs.' Statement of Facts ¶¶ 28–30; Resp. to Defs.' Statement of Facts ¶¶ 28–30.

24.  Ms. Albright did not give Mr. Eller crutches on February 23, 2015 or February 24, 2015. Albright dep. 104:25–05:2.

25.  Despite Mr. Eller's request to have the x-ray taken immediately, the imaging was not performed until February 25, 2015.  Defs.' Statement of Facts ¶ 31; Resp. to Defs.' Statement of Facts ¶ 31.

26.  Mr. Kudlauskas reviewed the imaging on February 25, 2015 and determined that Mr. Eller's leg was fractured.  Mr. Kudlauskas ordered that Mr. Eller receive a bottom bunk restriction, crutches, ibuprofen, and a half cast.  Defs.' Statement of Facts ¶ 34; Resp. to Defs.' Statement of Facts ¶ 34; ECF No. 156-11, at 3.

27.  Mr. Kudlauskas then spoke with an orthopaedic surgeon on the phone and subsequently submitted a request for an orthopaedic consult.  Defs.' Statement of Facts ¶ 36; Resp. to Defs.' Statement of Facts ¶ 36.

28.  Mr. Kudlauskas did not order a "bottom tier restriction," which would have allowed Mr. Eller to stay in a cell on the lower tier.  Defs.' Statement of Facts ¶ 35; Resp. to Defs.' Statement of Facts ¶ 35.

29.  Mr. Eller received surgery to treat his broken leg on March 4, 2015.  Defs.' Statement of

Facts ¶ 37; Resp. to Defs.' Statement of Facts ¶ 37.

30. In addition to his kites, Mr. Eller submitted grievances regarding the excessive force incident and his medical needs. ECF No. 156-17, at 44–71.

31. SCF policy establishes a four-step process for resolving inmate grievances. This includes an informal opportunity to engage in dialog with the allegedly offending individual and three formal steps. The policy requires inmates to file a step one grievance within thirty days of discovering the underlying issue. The inmate must then file a step two grievance within five days of receiving an unsatisfactory response to the step one grievance. Similarly, the inmate must file a step three grievance within five days of receiving an unsatisfactory step two response. Aff. of Anthony Decesaro ¶¶ 4–8, ECF No. 156-17.

32. Although Mr. Eller regularly requested informal and step one grievance forms between February 13, 2015 and February 25, 2015, SCF staff denied each of his requests. Aff. of William Eller ¶¶ 12, 17, 20–22, 27.

33. Once Mr. Eller obtained the proper forms, he filed six sets of grievances related to the events underlying this lawsuit. ECF No. 156-17, at 44–71; Resp. to Defs.' Statement of Facts ¶ 46; Reply to Resp. to Defs.' Statement of Facts ¶ 46, ECF No. 170.

34. Mr. Eller filed his first grievance on April 3, 2015. This grievance complained of Officer Tonch's, Officer Ruch's, and Officer Park's wrongful use of force. Additionally, the grievance stated that this was his third attempt to file a complaint related to this issue. At steps one and two, an SCF staff member reviewed the allegations and found no use of force violation. Additionally, the staff member noted that grievances may address only one incident, and they cannot challenge Code of Penal Discipline convictions. At step three,

SCF denied the grievance for the additional reason that prisoners may not seek damages for pain and suffering through the grievance system. ECF No. 156-17, at 68–71.

35. Also on April 3, 2015, Mr. Eller filed a grievance related to delay in receiving medical attention. This grievance was denied as untimely and for seeking pain and suffering damages. *Id.* at 44–47.

36. Mr. Eller filed his third grievance on April 22, 2015. This grievance also complained of delay in receiving medical treatment for his broken bone. SCF denied this as a duplicate grievance and for being filed out of time. *Id.* at 48–51.

37. Mr. Eller's fourth set of grievances complained that SCF medical staff denied him care and refused to move him to a bottom tier cell until he received surgery. Mr. Eller filed the step one grievance on April 22, 2015. In response, SCF noted that Mr. Eller was placed in a bottom tier cell the same day as he was given a bottom tier restriction—March 4, 2015. At step three, SCF stated that his grievance improperly sought damages for pain and suffering. *Id.* at 54–57.

38. The fifth set of grievances, which Mr. Eller filed on April 27, 2015, complained of SCF staff's refusal to immediately transfer Mr. Eller to a hospital for his broken bone. SCF denied these grievances as untimely and for improperly seeking pain and suffering damages. *Id.* at 59–62.

39. Mr. Eller initiated his final set of grievances on October 1, 2015. These grievances complained of the use of force incident on February 13, 2015. SCF denied these grievances as untimely. *Id.* at 63–66.

40. Mr. Eller contends that, throughout the months following the use of force incident, several

officers threatened him to deter him from filing grievances.  Defs.' Statement of Facts ¶ 50;

Resp. to Defs.' Statement of Facts ¶ 50.

## II.    Procedural History

Initially proceeding pro se, Mr. Eller filed his Complaint on December 11, 2015.  Compl.,

ECF No. 1.  After Mr. Eller amended his Complaint various times, Mr. Eller's pro bono counsel

entered an appearance on October 5, 2016.  *See* ECF Nos. 97–100.  On November 21, 2016, Mr.

Eller's counsel filed the operative Fourth Amended Complaint, ECF No. 107, which asserts two

claims for relief: (1) Eighth Amendment excessive force against Defendants Tonche, Ruch, Park,

Tavenner, and Wixson and (2) Eighth Amendment deliberate indifference to medical needs against

sixteen individuals.  *Id.* ¶¶ 144–73.

While the parties were proceeding through discovery, they stipulated to the dismissal of

Defendants Tavenner, Wixson, Melo, Kautz, Kobertstein, Lish, and Lotman.  ECF No. 146.

Additionally, on October 24, 2017, the parties agreed to dismiss all claims against Defendant Russell

and the deliberate indifference claim against Officers Park and Ruch.  ECF No. 153.  Accordingly,

the remaining defendants to Mr. Eller's first claim are Officers Tonche, Ruch, and Park.  Mr. Eller

asserts his second claim for relief against Defendants LeFever, Darula, Albright, Kudlauskas,

Larson, and Jackson.

On October 25, 2017, Defendants filed the present Motion for Summary Judgment, ECF No.

156.  Defendants' motion seeks dismissal of Mr. Eller's claims as to all Defendants for failure to

exhaust pursuant to the Prison Litigation Reform Act ("PLRA").[2]  *Id.* at 14–18.  Additionally,

---

[2] Defendants' reply brief concedes that the PLRA's exhaustion requirement does not apply
to Ms. Jackson.  Reply in Supp. of Mot. for Summ. J. 10, ECF No. 170.

Defendants Park, Ruch, Jackson, Larson, Albright, and Kudlauskas contend they are entitled to qualified immunity. *Id.* at 19–30. Defendants Tonche, LeFever, and Darula do not seek summary judgment on qualified immunity grounds.

Mr. Eller filed his response brief on December 15, 2017. Resp. to Defs.' Mot. for Summ. J., ECF No. 163. Regarding exhaustion, Mr. Eller claims the PLRA does not apply to him, because he filed the operative Fourth Amended Complaint after he was released from prison. *Id.* at 20–21. Furthermore, Mr. Eller contends the grievance process was unavailable, he timely filed some of his grievances, and Defendants waived untimeliness as to others. *Id.* at 21–24. Then, Mr. Eller claims that disputed issues of fact exist as to each individual's qualified immunity defense. *Id.* at 24–35. Mr. Eller timely filed a Reply in Support of his Motion, ECF No. 170.

## LEGAL STANDARD

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976,

979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

The Court first recommends finding that the PLRA's exhaustion requirement does not presently require dismissal of Mr. Eller's claims. Then, the Court recommends holding that summary judgment is improper as to Officer Park, Officer Ruch, Ms. Jackson, and Ms. Larson;

however, Ms. Albright and Mr. Kudlauskas are entitled to qualified immunity.

## I.     Exhaustion

Defendants have not undisputedly demonstrated that the PLRA's exhaustion requirement bars Ms. Eller's claims. The Court will first address Mr. Eller's threshold argument that the PLRA does not apply to this case. The Court finds that the PLRA's exhaustion requirement applies to all defendants other than Ms. Jackson. Then the Court finds that, although Mr. Eller did not timely exhaust any of his claims, Defendants waived an untimeliness objection to Mr. Eller's use of force claim and bottom tier restriction allegation. Regarding Mr. Eller's denial of medical care grievances, the Court finds that disputed issues of fact exist as to whether administrative remedies were available.

As a threshold matter, the Court finds that the PLRA's exhaustion requirement applies to all defendants other than Ms. Jackson, for whom Defendants agree exhaustion is not required. *See* Defs.' Reply in Supp. of Mot. for Summ. J. 10, ECF No. 170. Mr. Eller argues the PLRA does not apply, because he was released from incarceration before he filed his Fourth Amended Complaint. Resp. to Defs.' Mot. for Summ. J. 20–21. However, it is a plaintiff's condition "at the time he filed suit," not at the time he amended his complaint, that is relevant to whether he must exhaust. *Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1150 (10th Cir. 2005); *Figueroa v. Okla. Dep't of Corrs.*, 501 F. App'x 746, 750–51 (10th Cir. 2012) (unpublished) (holding that the PLRA's exhaustion requirement applied, because the plaintiff's "claims relate to her confinement in [Department of Corrections] custody, and she filed her original complaint while she was in [] custody"); *West v. Ortiz*, No. 06-1192, 2007 WL 706924, at *6 (10th Cir. Mar. 9, 2007) (unpublished) ("[W]e leave to the district court to determine in the first instance the applicability of the PLRA's exhaustion

requirement because that determination requires the resolution of fact questions concerning [the plaintiff's] precise incarceration status when he mailed or filed the original complaint."). Thus, a defendant may assert an exhaustion defense if the plaintiff brought claims against that defendant while the plaintiff was incarcerated.

The Court finds that Mr. Eller named all defendants other than Ms. Jackson in the original Complaint that he filed while he was incarcerated. Defendants Tonche, Ruch, Park, Lefever, Darula, and Albright are specifically named in the heading. Compl. 1, ECF No. 1. Furthermore, Mr. Eller uses the "et al." designation on the last line of the heading, and the body of the Complaint asserts claims against Ms. Larson and Mr. Kudlauskas. *Id.* at 1, 17, 22. Indeed, Mr. Eller refers to Ms. Larson and Mr. Kudlauskas as "Defendants." *Id.* at 17, 24. This is sufficient to allege claims against Ms. Larson and Mr. Kudlauskas. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[A] party not properly named in the caption of a complaint may still be properly before the court if the allegations in the body of the complaint make it plain the party is intended as a defendant."). As such, the Court must analyze whether Mr. Eller properly exhausted his claims as to all defendants other than Ms. Jackson.

A.     Exhaustion of Use of Force Allegations

Mr. Eller does not dispute that his use of force grievances were filed outside of the thirty-day period. Resp. to Mot. for Summ. J. 24. Indeed, Mr. Eller's first recorded grievance related to the use of force was on April 3, 2015—almost fifty days after the February 13, 2015 incident. ECF No. 156-17, at 68. However, Mr. Eller contends Defendants waived an untimeliness objection by ruling on the merits of the grievance. Resp. to Mot. for Summ. J. 24. The Court agrees.

"If a prison accepts a belated filing, and considers it on the merits, that step makes the filing

proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court." *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), *abrogated on other grounds*; *Jewkes v. Shackleton*, No. 11-cv-00112-REB-BNB, 2012 WL 3028054, at *2 (D. Colo. July 23, 2012) (finding an untimeliness objection waived, because "[a]t no point in the grievance process . . . did the CDOC raise the issue of the timeliness . . . .");[3] *Sansom v. Milyard*, No. 10-cv-02391-WYD-MJW, 2012 WL 1015200, at *4 (D. Colo. Mar. 23, 2012) ("[H]aving established that the DOC responded to his Step 1 grievance on the merits, I find that Plaintiff has responded in a way that raises a genuine dispute regarding his failure to exhaust."). In response to Mr. Eller's April 3, 2015 use of force grievance, SCF staff stated, "All [u]ses of [f]orce[] [were] reviewed and no wrong doing was found in this incident." ECF No. 156-17, at 68. In denying Mr. Eller's step two grievance, SCF staff provided, "This use of force was reviewed and the force used was found to be appropriate and not excessive." *Id.* at 69. Although the step three denial mentioned that the grievance sought unavailable relief and was inconsistent with the step one and step two grievances, the denial did not state that any of the grievances were untimely. *Id.* at 71. As such, Defendants

---

[3] Defendants argue that *Jewkes* is distinguishable from the present case, because in that case the department of corrections told the plaintiff that she had exhausted her administrative remedies. Reply in Supp. of Mot. for Summ. J. 13. Here, in contrast, SCF denied the grievance for other procedural reasons in addition to denying it on the merits. ECF No. 156-17, at 68–71. However, in deciding that the defendant waived timeliness, the *Jewkes* court primarily relied on the fact that the defendant "responded fully and substantively to [the plaintiff's] grievance without raising the timeliness issue at any stage of the grievance process." *Jewkes*, 2012 WL 3028054, at *3. Similarly, SCF responded to Mr. Eller's grievance on the merits without discussing timeliness concerns. Moreover, Defendants in this case did not rely on procedural grounds in denying relief for Mr. Eller's use of force complaints. Indeed, the only procedural objections in the denials are that Mr. Eller requested unavailable relief and sought resolution of more than one issue. ECF No. 156-17, at 71. Thus, these "procedural objections" were not related to the use of force incident. Because Defendants only response to Mr. Eller's use of force allegations was that "the use of force was reviewed and the force used was found to be appropriate and not excessive," *id.*, Defendants "accept[ed] a belated filing, and consider[ed] it on the merits." *Ross*, 365 F.3d at 1186.

accepted Mr. Eller's belated filing and considered it on the merits. Pursuant to *Ross*, this "avoids exhaustion, default, and timeliness hurdles in federal court." 365 F.3d at 1186.

B.     Exhaustion of Bottom Tier Denial Allegations

It is undisputed that Mr. Eller did not grieve the denial of a bottom tier restriction within thirty days of the incident. Mr. Eller acknowledges that he was finally given access to the lower tier on March 4, 2015, and he did not file his grievance until April 22, 2015, ECF No. 156-17, at 54. However, similar to Mr. Eller's use of force grievance, Defendants did not address timeliness concerns in response to this grievance. The denials of Mr. Eller's step one and step two grievances state that he was given a bottom tier cell on March 4, 2015, which is the same day the restriction was authorized.[4] *Id.* at 54–55. Therefore, Defendants denied the grievances for failure to allege any improper conduct. The step three denial explains that the grievance process does not allow pain and suffering damages; it does not state that the grievance was untimely.[5] *Id.* at 57. Thus, instead of denying Mr. Eller's grievance as filed out of time, Defendants denied it on the merits. This waived Defendants' present untimeliness argument regarding the grievance.

C.     Exhaustion of Denial of Medical Care Allegations

Regarding Mr. Eller's denial of medical care complaints, the Court recommends finding that, although Mr. Eller did not timely exhaust these grievances and Defendants did not waive their

---

[4] Defendants apparently construed Mr. Eller's grievances as complaining of being denied a bottom tier restriction after his surgery on March 3, 2015. However, Mr. Eller's grievances make clear that he complained of being denied a bottom tier restriction "until [his] return from open surgery . . . ." ECF No. 156-17, at 54.

[5] To be sure, the request states that the time constrains "are now expired regarding these events." ECF No. 156-17, at 57. However, the grievance officer stated this to inform Mr. Eller that "there will be no further review of this matter." *Id.* At no point did the grievance officer state that Mr. Eller's initial grievance was filed out of time.

untimeliness objection, disputed issues of fact exist as to whether administrative remedies were available. Mr. Eller filed his first medical care grievance on April 3, 2015. ECF No. 156-17, at 44. Mr. Eller claims he filed this grievance timely, because he submitted it thirty days after his surgery. Resp. to Mot. for Summ. J. 24. However, even if the Court were to construe the grievance as complaining of being denied medical care in the morning of the day he received surgery,[6] thirty days after March 3, 2015 is April 2, 2015. Therefore, Mr. Eller did not comply with SCF policy, which requires that inmates file grievances "no later than 30 calendar days from the date the offender knew, or should have known, of the facts giv[ing] rise to the grievance." Grievance Policy, ECF No. 156-17, at 15. Because prison policy, not the PLRA, defines the applicable procedural rules, Mr. Eller did not timely exhaust his administrative remedies with regard to these allegations. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." (internal citations omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006))).

Additionally, unlike the grievances related to use of force and denial of a bottom tier restriction, SCF specifically denied this grievance as untimely. ECF No. 156-17, at 47 ("Your grievance is filed out of time."). Therefore, Defendants did not waive their untimeliness objection

---

[6] The Court notes that much of the conduct mentioned in the April 3, 2015 grievance occurred prior to March 3, 2015. Indeed, Mr. Eller complains that he was denied x-rays; however, Mr. Eller was provided x-rays on February 25, 2015. ECF No. 156-17, at 44; Defs.' Statement of Facts ¶ 31, ECF No. 156; Resp. to Defs.' Statement of Facts ¶ 31, ECF No. 163. The only incident that could have occurred on March 3, 2015 is that SCF staff denied Mr. Eller pain medication on the morning of his surgery. ECF No. 156-17, at 44 (stating that Mr. Eller was denied pain medication while he awaited surgery). Therefore, even if Mr. Eller had filed his grievance within thirty days of his surgery, it would only be timely as to this allegation.

with regard to the inadequate medical care allegations. However, the Court must still address whether Mr. Eller's failure to timely file a grievance can be excused, because administrative remedies were unavailable.

"[I]f an administrative remedy is not available, then an inmate cannot be required to exhaust it." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). "[A]n administrative remedy is not 'available' under the PLRA if 'prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy.'" *Id.* (alteration in original) (quoting *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010)). A prison official can prevent a prisoner from pursuing an administrative remedy by threatening an inmate or simply by physically obstructing the grievance process. *Id.* at 1252–53 (stating that a prison official can inhibit an inmate from utilizing administrative processes through threats or intimidation); *Gonyea v. Mink*, 206 F. App'x 745, 747 (10th Cir. 2006) (unpublished) ("[A]dministrative remedies may be deemed unavailable due to obstruction of the grievance process.").

Here, the Court finds that Mr. Eller demonstrates a disputed issue of fact regarding whether Defendants obstructed the grievance process.[7] Mr. Eller contends in his sworn affidavit that, despite his requests, prison officials did not provide him grievance forms until February 25, 2015. Aff. of William Eller ¶¶ 12–27, ECF No. 163-1. Once he received the grievance forms, officers prevented him from submitting them. *Id.* ¶ 40; *see* Eller dep. 252:19–:25 (stating that officers told him to quit pursuing grievances, because he would never prevail). Indeed, some officers went as far as tearing

---

[7] Defendants spend much of their motion and reply brief rebutting Mr. Eller's argument that administrative remedies were unavailable due to threats and intimidation. Mot. for Summ. J. 17. Because the Court finds evidence that Defendants physically prevented Mr. Eller from filing grievances, the Court need not address this issue.

up grievances at Mr. Eller's cell door and telling him he would never be able to successfully submit grievances. Aff. of William Eller ¶¶ 41–44. According to Mr. Eller, because this interference continued into April 2015, he did not successfully file any grievance forms until April 3, 2015. *Id.* ¶ 43; ECF No. 156-17, at 44–71. If a jury believes this testimony, it could reasonably find that prison officials prevented Mr. Eller from utilizing administrative remedies. *See Miller v Norris*, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)." (alterations in original)). Unlike *Williams v. Sirmon*, in which the prisoner did not claim that the defendants "prevented him from filing grievances, either by refusing to accept his grievances or destroying his papers," 350 F. App'x 294, 299 (10th Cir. 2009) (unpublished), Mr. Eller contends Defendants destroyed his grievances at his cell door. As such, it would be improper to dismiss Mr. Eller's Eighth Amendment deliberate indifference claim for failure to exhaust at this time.

## II. Qualified Immunity

Defendants next contend that Officer Park, Officer Ruch, Ms. Jackson, Ms. Larson, Ms. Albright, and Mr. Kudlauskas are entitled to qualified immunity. Mot. for Summ. J. 19–30, ECF No. 156. Qualified immunity protects a public official whose possible violation of a plaintiff's civil rights was not clearly established at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When faced with a qualified immunity defense, the plaintiff must establish '(1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions.'" *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). (quoting *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999)); *Wilson v. Layne*, 526 U.S. 603, 603 (1999).

The Court will first address the excessive force claims against Officers Park and Ruch. Then the Court will analyze whether the remaining Defendants are entitled to qualified immunity from Mr. Eller's deliberate indifference to medical needs claim.

A.     Eighth Amendment Use of Excessive Force

The Court finds that Officers Ruch and Park are not entitled to qualified immunity, because Mr. Eller presents evidence that they participated in a joint use of force and failed to intervene in Officer Tonche's use of force. In *Estate of Booker v. Gomez*, the Tenth Circuit stated that courts can aggregate officer conduct for purposes of qualified immunity if the defendants actively and jointly participated in the use of force or if an officer failed to intervene in another officer's use of force. 745 F.3d 405, 421–22 (10th Cir. 2014); *see also Tooley v. Young*, 560 F. App'x 797, 800 (10th Cir. 2014) (unpublished) ("[T]he inquiry must be defendant specific except when 'all Defendants actively and jointly participated in the use of force' or the facts support 'a failure-to-intervene theory.'" (quoting *Estate of Booker*, 745 F.3d at 422). If either of these situations is present, an officer may be held liable even if the "single [officer's] participation did not constitute excessive force." *Estate of Booker*, 745 F.3d at 422. The Court recommends finding that Mr. Eller has presented evidence of both situations.

First, Mr. Eller produces evidence that Officers Ruch and Park actively participated in the use of force. Defendants admit that Officer Ruch helped Officer Tonche take Mr. Eller to the ground. Resp. to Pl.'s Statement of Facts ¶ 1, ECF No. 170; Park dep. 41:10–:14, ECF No. 163-3. Additionally, Mr. Eller produces evidence that once he was on the ground, either Officer Ruch or

Officer Park kicked him in the torso.[8]  Eller dep. 101:1–:24, ECF No. 163-2.  Finally, Mr. Eller

submits an affidavit of a prisoner who witnessed the incident stating that Officers Park and Ruch

both participated in the use of force.  Aff. of Juan Maldonado, ECF No. 163-5, at 3 (stating that

Officers Tonche, Ruch, and Park "slammed Mr. Eller to the ground and started kicking and punching

him").  Although this evidence may not show that Officers Ruch and Park individually used

excessive force, it is sufficient to demonstrate that Officers Ruch and Park joined in the use of force

that, in the aggregate, may have been excessive.  Indeed, Defendants do not dispute that issues of

fact exist as to whether the amount of force used in the aggregate was unconstitutional.

Additionally, *Estate of Booker* clearly establishes the unconstitutionality of actively

participating in an excessive use of force.  745 F.3d at 421–22.  The court stated, "Because the

Defendants here engaged in a group effort, a reasonable jury could find them liable for any

underlying finding of excessive force."  *Id.* at 422.  Because Defendants do not presently assert a

qualified immunity defense as to the amount of force Officer Tonche used, Defendants apparently

concede that disputed issues of fact exist as to whether the amount of force used as a whole violated

_____

[8] Defendants argue that Mr. Eller's failure to identify which officer kicked him in the torso "is grounds for dismissal all on its own."  Mot. for Summ. J. 21.  The Court disagrees.  "[I]t is not necessary for plaintiff to identify which defendant landed which blow in an alleged assault to satisfy the requirement that they 'directly participated' in the assault."  *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1223–24 (D. Colo. 2001); *Mwangi v. Norman*, No. 16-cv-00002-CMA-NYW, 2016 WL 7223270, at *9 (D. Colo. Dec. 13, 2016) ("[W]here a plaintiff alleges that the individual defendants all participated in a single incident and acted in concert together, it would be inequitable to require a plaintiff to articulate which specific defendant committed which specific act during the incident in question.").  Defendants cite *Jenkins v. Wood*, 81 F.3d 988 (10th Cir. 1996) in support of their proposition that a plaintiff must identify which defendant committed which act.  Mot. for Summ. J. 21.  However, in *Jenkins*, the plaintiff failed to produce evidence that either defendant personally participated in the unconstitutional action.  81 F.3d at 994–96.  Here, in contrast, Mr. Eller has submitted evidence that either Officer Park or Officer Ruch kicked him in the torso.  That he is unable to identify which of the two officers did the allegedly unconstitutional act does not require dismissal of the claims against them.

clearly established law.

Second, even if Officers Park and Ruch did not participate in the use of force, the evidence before the Court demonstrates a disputed issue of fact as to whether they failed to intervene in Officer Tonche's use of force. "[E]ven if a single deputy's use of force was not excessive, 'a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.'" *Estate of Booker*, 745 F.3d at 422 (quoting *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)); *Casey v. City of Federal Heights*, 509 F.3d 1278, 1283 (10th Cir. 2007) ("[T]here is an affirmative constitutional duty to stop other officers from using unconstitutionally excessive force.").

> To establish a constitutional violation under a "failure to intervene" theory, the [p]laintiff[] must show: (i) the defendant officer was present at the scene; (ii) the defendant officer witnessed another officer applying force; (iii) the application of force was such that any reasonable officer would recognize that the force being used was excessive under the circumstances; and (iv) the defendant officer had a reasonable opportunity to intercede to prevent the further application of excessive force, but failed to do so.

*Martinez v. City and County of Denver*, No. 11-cv-00102-MSK-KLM, 2013 WL 5366980, at *5 (D. Colo. Sept. 25, 2013). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is [generally] an issue of fact for the jury . . . ." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Here, the Court finds evidence supporting each of the four elements. Regarding the first two, evidence demonstrates that Officers Ruch and Park were present at the scene and witnessed the use of force. Park dep. 50:10–:16, ECF No. 163-3 (Officer Park's testimony that she was standing approximately three feet from Officers Tonche and Ruch); Ruch dep. 42:4–:11, ECF No. 163-6

(Officer Ruch's testimony stating that she helped bring Mr. Eller to the ground); Aff. of Jonathan Trujillo, ECF No. 153-5, at 1–2 (stating that Officers Ruch and Park restrained Mr. Eller's leg while Officer Tonche was jumping on Mr. Eller's neck and spinal cord).

Third, Mr. Eller presents evidence that Officer Tonche punched him in the face, chipped his teeth by slamming his face into the concrete floor, and broke his left leg by jumping up and stepping on it. Eller dep. 102:9–03:23; Aff. of Jonathan Trujillo, ECF No. 153-5, at 1–2; Aff. of Jeremiah Woolbright, ECF No. 153-5, at 4. Viewing this evidence in a light most favorable to Mr. Eller, a reasonable officer would recognize that this amount of force was excessive under the circumstances. *See, e.g.*, *Smith v. Delamaid*, 842 F. Supp. 453, 460 (D. Kan. 1994) ("A reasonable police officer would know that to kick, punch, and throw a restrained, cooperative arrestee constitutes excessive force under the Due Process standard."). Indeed, Defendants do not move for summary judgment on the basis that this conduct was reasonable.

Fourth, Mr. Eller presents sufficient evidence to create a disputed issue of fact as to whether Officers Park and Ruch had a reasonable opportunity to intercede, but failed to do so. It is undisputed that the incident lasted approximately three minutes. Park dep. 58:2–:8; Pl.'s Statement of Facts ¶ 1, ECF No. 163; Resp. to Pl.'s Statement of Facts ¶ 1, ECF No. 170. Based on clearly established Tenth Circuit precedent, Officers Park and Ruch were on notice that failing to intercede in a three minute use of force incident may give rise to a constitutional violation. *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008) (holding that the district court was correct in denying qualified immunity on a failure to intervene theory, because the plaintiff "described the arrest as lasting between three and five minutes"); *Estate of Booker*, 745 F.3d at 422 (holding that disputed issues of fact existed as to whether the defendants could have prevented or stopped the

assault, because "the [d]efendants were present and observed the entire use of force over a two-to-three minute period"). Accordingly, a reasonable jury could find that Officer Ruch's and Officer Park's conduct violated clearly established law.

Defendants contend Mr. Eller cannot rely on this theory, because he failed to assert a failure to intervene claim in his Fourth Amended Complaint. Reply in Supp. of Mot. for Summ J. 16, ECF No. 170. The Court disagrees. Importantly, a plaintiff need not assert failure to intervene as a separate claim. *See Lynch v. Barrett*, No. 09-cv-00405-JLK-MEH, 2010 WL 3938357, at *6 (D. Colo. June 9, 2010) ("The Tenth Circuit appears to denominate a failure to intervene theory as a variety of a 1983 excessive force claim." (citing *Vondrak*, 535 F.3d at 1204)). In *Vondrak*, the Tenth Circuit analyzed failure to intervene as a way to find a defendant liable for an Eighth Amendment violation, not as a separate claim for relief. 535 F.3d at 1210. Indeed, the plaintiff in *Vondrak* did not bring a separate claim for failure to intervene. *Id.* at 1200.

To be sure, a plaintiff must still allege some facts putting the defendant on notice that he seeks recovery based on a failure to intervene theory. *See Chavez v. Hatterman*, No. 06-cv-02525-WYD-MEH, 2009 WL 82496, at *3 (D. Colo. Jan. 13, 2009) (finding that a failure to intervene theory was not properly before the court, because the "[p]laintiff d[id] not mention this claim or any supporting allegations in his complaint . . . ."). Mr. Eller's Fourth Amended Complaint contains such allegations. Fourth Am. Compl. ¶ 49, ECF No. 107 ("Defendants Park and Ruch not only failed to intervene to stop Defendant Tonche from committing this unlawful assault, they joined in assaulting Mr. Eller as well."); *id.* ¶ 150 ("Defendants knew that they were creating a substantial risk of causing Mr. Eller serious harm, and yet they nevertheless either eagerly joined in the unlawful assault or failed to intervene to stop it."). Accordingly, the Court finds that Mr. Eller may rely on

a failure to intervene theory in support of his Eighth Amendment excessive force claim.

In sum, because Mr. Eller presents evidence that Officers Ruch and Park participated in the use of force and failed to intervene in Officer Tonche's use of force, the Court finds it appropriate to consider the use of force against Mr. Eller in the aggregate. Because Defendants do not dispute that issues of fact exist as to whether the amount of force used in the aggregate was excessive, summary judgment in favor of Officers Ruch and Park is improper. Furthermore, when viewed in a light most favorable to Mr. Eller, the evidence demonstrates a violation of clearly established law. Accordingly, the Court recommends finding that Officers Ruch and Park are not entitled to qualified immunity at this time.

B.     Eighth Amendment Deliberate Indifference to Medical Needs

Mr. Eller's second claim asserts an Eighth Amendment violation for deliberate indifference to medical needs. Fourth Am. Compl. ¶¶ 161–73. Defendants claim Ms. Jackson, Ms. Larson, Ms. Albright, and Mr. Kudlauskas are entitled to qualified immunity.[9] Mot. for Summ. J. 24–30. The Court agrees as to Ms. Albright and Mr. Kudlauskas, but disagrees as to Ms. Jackson and Ms. Larson. After providing background on Eighth Amendment claims for deliberate indifference to medical needs, the Court will address the claim as to each defendant.

To prove an Eighth Amendment claim for deliberate indifference to serious medical needs,

---

[9] In their reply brief, Defendants contend Mr. Eller cannot establish a constitutional violation against Ms. Darula. Reply in Supp. of Mot. for Summ. J. 17. According to Defendants, Mr. Eller claims for the first time in his response brief that Ms. Darula was aware of a serious medical need. *Id.* However, Mr. Eller pleaded in his Fourth Amended Complaint that Ms. Darula acted with deliberate indifference to Mr. Eller's medical needs. Fourth Am. Compl. ¶ 86. Because Defendants do not assert in their motion that Ms. Darula is entitled to qualified immunity at this time, the Court will not consider Defendants' argument as to Ms. Darula. *See, e.g.*, *United States v. Horek*, 137 F.3d 1226, 1229 n.3 (10th Cir. 1998) (noting that courts do not normally consider arguments raised for the first time in a reply brief).

a plaintiff must satisfy objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective component of the test is met if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). The subjective component requires that the plaintiff prove the defendant disregarded a known substantial risk of harm by failing to take reasonable measures to abate it. *Callahan*, 471 F.3d at 1159. "The deliberate indifference standard poses 'a high evidentiary hurdle' 'akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm.'" *Heidtke v. Corrs. Corp. of Am.*, 489 F. App'x 275, 280 (10th Cir. 2012) (unpublished) (quoting *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006)). Therefore, "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Self*, 439 F.3d at 1232.

1. Claim as to Ms. Jackson

The Court finds Mr. Eller produces sufficient evidence to demonstrate a disputed issue of fact as to whether Ms. Jackson was deliberately indifferent to Mr. Eller's injury. Defendants concede for purposes of this motion that Mr. Eller's injury is sufficiently serious to satisfy the objective component. Mot. for Summ. J. 26.

Regarding the subjective component, Mr. Eller testified that he informed Ms. Jackson he was in extreme pain, had a broken bone, and could not bear weight on his leg. Eller dep. 40:21–41:12. Although Mr. Eller does not identify the exact date of this conversation, he produces evidence that he informed every nurse who distributed medication between February 13, 2017 and February 23, 2017 of his injury, Aff. of William Eller ¶ 5, ECF No. 163-1; Eller dep. 41:18–:19, and Ms. Jackson

distributed medication in Mr. Eller's unit on February 15, 16, 22, and 23. Pl.'s Statement of Facts ¶ 8; Resp. to Pl.'s Statement of Facts ¶ 8. If the jury believes this testimony, it could find Ms. Jackson knew Mr. Eller was in extreme pain and may have had a broken bone on the first day she distributed medication—February 15, 2018.[10]

Furthermore, Mr. Eller presents evidence that Ms. Jackson disregarded the risk. Mr. Eller contends that, although he gave Ms. Jackson a kite, that kite was never entered into the system. Reply in Supp. of Mot. for Summ. J. ¶ 7 (admitting that none of the kites Mr. Eller submitted were entered into the system). In fact, the evidence before the Court does not indicate that Ms. Jackson took any action in response to Mr. Eller's complaints. This differentiates this case from *Kirkland v. O'Brien*, No. 12-cv-02083-WJM-KLM, 2014 WL 1224564 (D. Colo. Mar. 25, 2014). In that case, in response to the plaintiff's complaint that his leg was broken, the nurse evaluated his condition; considered his complaints; and provided him with pain medication, ice packs, and a wheelchair. *Kirkland*, 2014 WL 1224564, at *5. In contrast, when viewed in a light most favorable to Mr. Eller, the evidence indicates that Ms. Jackson listened to Mr. Eller's complaints but did not provide medical treatment or enter his kite into the computer system. The Court finds this sufficient to preclude summary judgment in favor of Ms. Jackson.

Additionally, Ms. Jackson's actions, when viewed in a light most favorable to Mr. Eller, violated clearly established law. In *Al-Turki v. Robinson*, the Tenth Circuit stated, "A medical

_____

[10] Contrary to Defendants' contention, the fact that other nurses also distributed medication on these dates does not preclude a finding that Ms. Jackson had knowledge of Mr. Eller's broken leg. Mr. Eller produces evidence that he complained to every nurse who distributed medication. Aff. of William Eller ¶ 5. Therefore, that other nurses distributed medication establishes that Ms. Jackson was not the only nurse with knowledge of Mr. Eller's injury; it does not demonstrate that Ms. Jackson did not know of Mr. Eller's extreme pain.

professional may not ignore an inmate's complaints of severe pain and then escape liability because later-discovered facts about the actual cause and ultimate duration of the inmate's pain . . . do not precisely correspond with the facts of previous Tenth Circuit cases." 762 F.3d 1188, 1194–95 (10th Cir. 2014); *see also Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) (citing *Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990) for the proposition that a "few hours delay in treating inmate's broken foot could render defendants liable"). Thus, it has been clearly established at least since 2014 that it is unconstitutional for a nurse to completely ignore an inmate's complaints of severe pain. Here, Mr. Eller's evidence indicates that Ms. Jackson appreciated Mr. Eller's complaints of severe pain, yet did nothing in response. Accordingly, the Court recommends finding that Ms. Jackson is not entitled to qualified immunity at this time.

### 2. Claim as to Ms. Larson

Similar to Ms. Jackson, Mr. Eller submits evidence creating a disputed issue of fact as to whether Ms. Larson was deliberately indifferent to Mr. Eller's medical needs. Mr. Eller testified that on February 22, 2015, he submitted a kite to Ms. Larson and explained that his leg feels broken and "[j]ust standing out on it out of bed caus[es] extreme pain and [he] fall[s] down." Eller dep. 175:23–76:2. Furthermore, although Mr. Eller cannot recall the specific dates, he testified that he had submitted prior kites and verbal requests to Ms. Larson. *Id.* at 176:20–:24. Indeed, Defendants admit that a disputed issue of fact exists as to whether Mr. Eller had multiple conversations with Ms. Larson about his extreme pain and injury. Resp. to Pl.'s Statement of Facts ¶ 12. Therefore, Mr. Eller produces sufficient evidence to demonstrate a dispute as to whether Ms. Larson had knowledge of his injury.

The evidence also indicates that Ms. Larson disregarded a risk of harm to Mr. Eller. Not

only did Ms. Larson fail to submit the kites she received from Mr. Eller, she threw them away and tore them up in front of him. Eller dep. 253:20–:23. Of course, a jury may choose not to credit this testimony; but if the jurors accept the evidence, they could reasonably find that Ms. Larson disregarded Mr. Eller's complaints of severe pain.

Furthermore, it was clearly established at the time of the incident that a medical professional cannot listen to an inmate's complaints of severe pain and then take affirmative action to prevent him from receiving medical treatment. *See, e.g.*, *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) ("[D]eliberate indifference occurs when prison officials prevent an inmate from receiving treatment . . . ."). Therefore, the Court recommends finding that Ms. Larson is not entitled to summary judgment on Mr. Eller's Eight Amendment claim.

### 3. Claim as to Ms. Albright

The Court recommends finding that Ms. Albright is entitled to qualified immunity, because the evidence indicates that Ms. Albright provided constitutionally adequate care once she learned of Mr. Eller's injury. Mr. Eller does not produce evidence from which a jury could find that Ms. Albright knew of his medical condition prior to February 23, 2015. Importantly, unlike for Ms. Jackson and Ms. Larson, Mr. Eller does not contend he specifically informed Ms. Albright of his condition or that Ms. Albright distributed medication in Mr. Eller's unit. Instead, Mr. Eller asserts Ms. Albright knew of his injuries, because she was the charge nurse responsible for triaging kites. Resp. to Mot. for Summ. J. 33. However, that Ms. Albright was in charge of responding to kites, without more, does not demonstrate she had actual knowledge that Mr. Eller was suffering extreme pain. *See, e.g.*, *Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1498 (10th Cir. 1990) (stating that to prove the subjective component of deliberate indifference, the plaintiff must show the defendant

"had actual knowledge of the specific risk of harm"). Mr. Eller does not produce any evidence that Ms. Albright saw his kites or heard about the pain he was suffering before February 23, 2015. In fact, Mr. Eller agrees that none of his kites were entered into the computer system by SCF personnel. Pl.'s Statement of Facts ¶ 7. Therefore, the evidence before the Court does not create a disputed issue of fact as to whether Ms. Albright knew of Mr. Eller's need for medical attention prior to February 23, 2015.

Once Ms. Albright learned of Mr. Eller's condition on February 23, 2015, she provided constitutionally adequate care. It is undisputed that Ms. Albright conducted an examination, performed a capillary refill, ordered an ACE wrap and ice, and requested that Mr. Eller be seen by the physician assistant, Mr. Kudlauskas. ECF No. 156-11, at 4; Defs.' Statement of Facts ¶¶ 28–30; Resp. to Defs.' Statement of Facts ¶¶ 28–30. Additionally, Ms. Albright completed a form that permitted Mr. Eller to obtain an x-ray. ECF No. 156-11, at 4. Although Mr. Eller may take issue with the extent and speed of the care Ms. Albright performed, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999). Indeed, even if the level of care Ms. Albright provided was negligent, "[a] negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Id.*

Relevant case law from the Tenth Circuit and the District of Colorado supports the Court's finding. In *Inman v. Stock*, the plaintiff complained of a broken bone in his hand, and the nurse examined the plaintiff "three days after his injury, ordered x-rays, and determined that no other medical intervention appeared necessary." 248 F. App'x 892, 895 (10th Cir. 2007) (unpublished). In affirming the district court's dismissal of the claim, the Tenth Circuit stated, "[e]ven assuming

Ms. Stock was negligent, the alleged negligence is not sufficient to state a valid § 1983 claim against her." *Id.* In *Kirkland*, the plaintiff failed to demonstrate a constitutional violation, because the nurse "evaluated Plaintiff, considered his complaints, and provided him with pain medication, ice packs, a wheelchair, and a future appointment with a doctor" for his broken bone. 2014 WL 1224564, at *5. According to the court, the nurse's failure to perform tests or provide an immediate visit with a doctor indicates nothing more than negligence. *Id.* Similarly, Ms. Albright examined Mr. Eller the same day as she became aware of his injury, ordered x-rays, and provided Mr. Eller with an ACE wrap and ice. ECF No. 156-11. Ms. Albright's failure to perform further tests or ensure that Mr. Eller receive immediate x-rays does not give rise to a constitutional violation.

Furthermore, even if Mr. Eller had established an Eighth Amendment violation against Ms. Albright, Mr. Eller does not cite to any law clearly establishing that the level of care Ms. Albright provided was unconstitutional. In support of his argument that the violation was clearly established, Mr. Eller cites *Al-Turki v. Robinson*, 762 F.3d 1188 (10th Cir. 2014). Resp. to Mot. for Summ. J. 35. However, in that case, the plaintiff produced evidence that the defendant completely ignored his complaints of severe pain. *Al-Turki*, 762 F.3d at 1191–92. Here, in contrast, the undisputed evidence indicates that Ms. Albright treated Mr. Eller's injury; although not in the manner Mr. Eller would have liked. Accordingly, the Court recommends holding that Ms. Albright is entitled to qualified immunity.

### 4. Claim as to Mr. Kudlauskas

The Court also recommends granting qualified immunity to Mr. Kudlauskas. The parties do not dispute that Mr. Kudlauskas first learned of Mr. Eller's injury on February 23, 2015. Defs.' Statement of Facts ¶ 27; Resp. to Defs.' Statement of Facts ¶ 27. After receiving the x-rays on

February 25, 2015, Mr. Kudlauskas determined that Mr. Eller's leg was fractured and ordered that Mr. Eller receive a bottom bunk restriction, crutches, ibuprofen, and a half cast.[11] Defs.' Statement of Facts ¶ 34; Resp. to Defs.' Statement of Facts ¶ 34; ECF No. 156-11, at 3. Additionally, Mr. Kudlauskas spoke with an orthopaedic surgeon and submitted a request for an orthopaedic consult. Defs.' Statement of Facts ¶ 36; Resp. to Defs.' Statement of Facts ¶ 36. Similar to Mr. Eller's claim against Ms. Albright, the Court finds that any issue regarding the sufficiency of the care Mr. Kudlauskas provided constitutes a mere disagreement with Mr. Eller's course of treatment. *See Jackson v. McCollum*, 118 F. App'x 389, 391 (10th Cir. 2004) (unpublished) (holding that the plaintiff failed to demonstrate deliberate indifference to his ankle injury, because the plaintiff had been evaluated many times, received three outside orthopaedic consultations, and had multiple x-rays).

Mr. Eller also claims Mr. Kudlauskas violated his constitutional rights by refusing to provide him a cell on the bottom tier. Resp. to Mot. for Summ. J. 34. Just as is true with the other treatment decisions Mr. Kudlauskas made, Mr. Kudlauskas' decision to deny Mr. Eller a bottom tier cell was simply an exercise of his judgment as to the medically necessary level of treatment. *See Lamar v. Boyd*, 508 F. App'x 711, 713–15 (10th Cir. 2012) (unpublished) (dismissing a claim against a nurse practitioner for denying a lower tier restriction to a prisoner with a back injury); *Escobar v. Holditch*, No. 10-cv-02050-CMA-KLM, 2012 WL 592851, at *12 (D. Colo. Feb. 1, 2012) (finding that refusing a lower tier restriction to a prisoner who suffered from chronic pain was a mere difference of opinion as to the plaintiff's course of treatment). Such a decision does not give rise

---

[11] Although Mr. Eller contends he did not actually receive ibuprofen and crutches, Mr. Eller provides no evidence that Mr. Kudlauskas knew he failed to receive care consistent with the medical orders.

to a constitutional violation.  *Perkins*, 165 F.3d at 811.  Moreover, even if denying Mr. Eller a bottom tier restriction constituted a constitutional violation, Mr. Eller does not meet his burden of demonstrating that this violated clearly established law.  Accordingly, Mr. Kudlauskas is entitled to qualified immunity.

<u>**CONCLUSION**</u>

In sum, the Court recommends denying summary judgment as to all Defendants other than Ms. Albright and Mr. Kudlauskas.  Specifically, the Court recommends finding that Defendants are not entitled to dismissal for Mr. Eller's failure to exhaust at this time.  Additionally, the Court recommends holding that Mr. Eller demonstrates disputed issues of fact precluding summary judgment in favor of Officer Park, Officer Ruch, Ms. Jackson, and Ms. Larson.  However, Ms. Albright and Mr. Kudlauskas are entitled to qualified immunity.  Accordingly, the Court recommends that Defendants' Combined Motion and Brief in Support of Summary Judgment [<u>filed October 25, 2017; ECF No. 156</u>] be **granted in part and denied in part**.[12]

---

[12]  Be advised that all parties shall have fourteen days after service to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

Entered and dated at Denver, Colorado, this 14th day of March, 2018.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge